**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3829-24

RICARDO MUNOZ,

     Petitioner-Respondent,

v.

COSTCO,

     Respondent-Appellant.

_____

Argued May 20, 2026 – Decided August 12, 2026

Before Judges Currier and Jablonski.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2023-11462.

Anne M. Hammill-Pasqua argued the cause for appellant (Capehart & Scatchard, PA attorneys; Carla P. Aldarelli, of counsel; Maura Burk, on the briefs).

Daniel M. Santarsiero argued the cause for respondent (Law Offices of Jonathan F. Marshall, attorneys; Daniel M. Santarsiero, on the brief).

PER CURIAM

In this workers' compensation matter, appellant Costco appeals from the July 3, 2025 order granting petitioner Ricardo Munoz's motion for medical and total temporary disability benefits (TTD). We affirm.

Munoz was working part-time at Costco in January 2022 when he injured his right knee helping a customer lift a generator into a truck. Munoz immediately reported the injury to a manager and received treatment from several doctors. Munoz was diagnosed with a right knee medial meniscal tear and extensive chondromalacia of the patellofemoral trochlear groove. Dr. Daniel Richmond performed a right knee arthroscopic medial meniscectomy on May 19, 2022. Dr. Richmond cleared Munoz to return to work on "light duty" status on June 2, 2022, and subsequently cleared him to work full-duty effective July 12, 2022.

On July 15, 2022, Munoz reported to Dr. Richmond that he was "having difficulty working full duty and [that] after a couple hours his knee becomes swollen." Dr. Richmond recommended petitioner continue working full duty. On August 2, 2022, Munoz continued to complain of persistent swelling and worsening symptoms after working for five hours. Dr. Richmond again recommended Munoz continue working full duty and stated in his note that

2                                                          A-3829-24

Munoz appeared "to be [sic] improved from the arthroscopy with regards to his medial meniscus."

Munoz resigned from Costco on September 29, 2022. The resignation form listed his reason for leaving as "personal reasons." Munoz said he told the manager who completed the resignation form that he "couldn't continue working because [his] knee was just painful and [he couldn't] keep working in sales."

During the workers' compensation hearing, Munoz testified the only reason he stopped working at Costco was because of the problems he was having with his right knee following the January injury. Munoz stated after he returned to work full duty his right knee would regularly "blow up" and "get swollen" during his work shift, making it difficult for him to walk or even get in his vehicle. Munoz said after he finished his shift, he was unable to do even simple activities like climbing the steps to his home or going food shopping due to pain in his right knee.

Munoz testified managers and coworkers at Costco knew he was resigning because of the ongoing knee pain. He stated he asked about the availability of another position that involved less physical tasks. Munoz also said he contacted the workers' compensation adjuster numerous times attempting to get further medical treatment, but the phone calls were not returned.

A-3829-24

Munoz stated he intended to work at Costco for many more years. He did not look for other employment after leaving Costco.

Gabrielle Plate, Costco's HR representative, testified that when Munoz resigned, he made no mention of his right knee or right knee injury. She stated Munoz told her he had a family member who was ill and that he could not commit to being at work.

When questioned about this information, Munoz stated that after he resigned from Costco, he visited his sick father in Puerto Rico in October or November of 2022. He also visited his father three or four times between 2023 and 2024.

Munoz returned to Dr. Richmond in June 2023, advising the pain in his right knee "never went away." Dr. Richmond opined that Munoz's current symptoms were related to his pre-existing patellofemoral degenerative joint disease and it did not appear that the meniscal tear contributed to the current symptoms. Dr. Richmond also recommended Munoz continue working full duty even though his report noted Munoz no longer worked at Costco.

After Dr. Richmond ordered an X-ray, he compared the film with prior testing and opined there was no progression of the medial compartment degenerative joint disease as it was "[e]ssentially unchanged compared to prior

films."  The doctor termed the patellofemoral degenerative joint disease as "mild, moderate."  Dr. Richmond stated Munoz's "symptoms are likely related to the patellofemoral [degenerative joint disease] and not due to his work related meniscal tear."

On August 14, 2023, Dr. Richmond wrote an addendum to his final note regarding causality and stating:

> It is my opinion that the extensive grade IV chondromalacia at the patellar trochlear femoral groove was pre-existing and unrelated to the reported work injury.  There is no clinical indication that he sheared off his entire surface of articular cartilage at the trochlear groove as result of bending down to pick up a heavy object.  There is no indication that this mechanism would have caused any aggravation of this pathology.  Given that this injury occurred while performing normal lifting activities and that it occurred within the first few months of his employment is indicative to me that this type of job may not be well tolerated in someone who [has] such extensive patellofemoral [degenerative joint disease].  The patient did have weightbearing films which failed to demonstrate any progression of medial joint space narrowing after the partial meniscectomy.  It remains my opinion that he is at [maximum medical improvement] with regards to the above work injury.  He can treat on his medical insurance for his pre-existing patellofemoral arthritis.

5

In an additional September 7, 2023 note, Dr. Richmond stated: "To reiterate, in my opinion there is no indication that there was any aggravation or acceleration of his pre-existing patellofemoral [degenerative joint disease]."

Costco paid Munoz temporary disability benefits from January 10, 2022, to April 5, 2022, and from May 19, 2022, to June 1, 2022.

In August 2023, Munoz filed a motion for temporary and/or medical benefits pursuant to N.J.A.C. 12:235-3.2, seeking TTD from September 2022 forward. He also sought authorization for medical treatment recommended by Dr. Gerardo Goldberger in his June 29, 2023 report. Costco responded by submitting Dr. Richmond's reports.

In January 2024, the court ordered Munoz to undergo a new medical exam with Dr. Frederick Song, which was performed in April, with the report being issued April 29, 2024.

During the hearing, Dr. Richmond testified that Munoz did not have any prior right knee complaints or medical treatment before his January 2022 work injury. In addition, Dr. Richmond confirmed Munoz only complained about patella pain after the right knee surgery and he only diagnosed Munoz with chondromalacia (arthritis) after surgery. Similarly, Munoz was only diagnosed with anterior knee pain and effusion after the surgery. Dr. Richmond conceded

6

Munoz only became symptomatic for his right knee degenerative joint disease after he returned to work full duty after surgery. Dr. Richmond opined that Munoz's injury did not aggravate his pre-existing right knee osteoarthritis because the injury resulted from "normal lifting activities."

Dr. Goldberger testified he saw Munoz on June 29, 2023, and diagnosed him with degenerative joint disease. Dr. Goldberger stated the arthroscopy aggravated Munoz's degenerative joint disease because the surgery "chang[ed] the mechanics of the knee" due to damage to the joint surface. Dr. Goldberger recommended physical therapy, additional X-rays, corticosteroid injections to reduce inflammation, and if Munoz could no longer "live with the symptoms," then a total knee replacement. Dr. Goldberger opined that Munoz could only perform "modified sedentary duty," essentially a "sit-down job."

Dr. Song also testified during the hearing. He said that although he could not definitively state Munoz's medial compartment injury and resulting surgery worsened his pre-existing patellofemoral arthritis, the injury likely "exacerbated the pain" and "activated his symptoms" in the patellofemoral compartment.

The compensation court issued a written decision and subsequent order on July 3, 2025, granting Munoz's motion. The compensation court ordered Costco to "authorize all treatments, testing and referrals recommended by Dr. Frederick

7

Song as to . . . petitioner's right knee injuries sustained because of his January 2, 2022 work accident. Dr. Song is now authorized as . . . petitioner's [c]ourt [o]rdered treating doctor." The compensation court further ordered Costco to "pay [TTD] to . . . petitioner retroactive to September 29, 2022. . . . [Costco] shall continue to pay TTD to . . . petitioner until he is returned to full duty work status by Dr. Song or as per statute."

On appeal, Costco contends the compensation court erred in discounting Dr. Richmond's opinion that the work injury did not aggravate/accelerate/exacerbate Munoz's underlying right knee condition, and in awarding Munoz TTD after he voluntarily resigned from work.

We review an agency decision under an arbitrary and capricious standard. Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

On appeal, the judicial role in reviewing all administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). However, "[a]lthough administrative agencies are entitled to discretion in making decisions, that discretion is not unbounded and must be exercised in a manner that will facilitate judicial review." In re Vey, 124 N.J. 534, 543-44 (1991).

A reviewing court is not, however, bound by an agency's interpretation of a statute or its determination of a strictly legal issue outside its charge. Allstars Auto Grp., Inc., 234 N.J. at 158.

A-3829-24

We begin with Costco's contention that the compensation court erred in rejecting Dr. Richmond's opinion that Munoz's right knee injury and resulting surgery did not aggravate his pre-existing asymptomatic osteoarthritis.

In a well-reasoned opinion, the compensation court considered the credibility of the witnesses and found Dr. Richmond's opinion regarding causation was less credible. The court found Dr. Richmond's testimony "incredulous" that Munoz had "no work restrictions as related to the medial meniscal tear," despite him "not having any difficulty performing his job prior to the work injury."

In contrast, the compensation court found Dr. Song more credible stating "Dr. Song was the most clear and impressive in his testimony making it easy to understand that . . . 'any surgery by definition would exacerbate any arthritis because the muscles are weakened by the surgery.'"

The compensation court made credibility determinations, stating:

> In this case, all three experts testified in [c]ourt. The [c]ourt relied upon their reports and testimony. This [c]ourt found all three experts to be credible. However, based on inconsistency in Dr. Richmond's opinion [sic]. This is considering [sic] the underlying admitted [sic] and causally related injury and his ultimate agreement with the recommendations for treatment regardless of cause when he was cross-examined by [p]etitioner's counsel. So even though he was the authorized surgeon, I find his opinion less

10

credible regarding the causal relationship of the need for . . . [p]etitioner's knee replacement. The [c]ourt did not overlook the fact that Dr. Goldberger and Dr. Song's opinions were based on seeing [p]etitioner one time for independent medical examinations. Dr. Goldberger and the neutral surgeon chosen by the [c]ourt both agree that the injury and surgery exacerbated . . . [p]etitioner's pre-existing degenerative joint disease. The [c]ourt found Dr. Song was the most clear and impressive in his testimony making it easy to understand that . . . "any surgery by definition would exacerbate any arthritis because the muscles are weakened by the surgery." Dr. Song's opinion regarding causal relationship was thoughtful and made more sense than Dr. Richmond. Dr. Richmond doesn't address the issue of continued acceleration of the arthritis and degenerative process in the right knee which is naturally due to the surgery. Also, Dr. Richmond ignores . . . [p]etitioner's mechanism of injury in his addendum regarding the causal relationship issue when he states it is just a normal lifting incident and in his testimony when it was clearly a twisting injury when [p]etitioner's foot did not move as he lifted the heavy object into [the] pick-up truck for the customer, especially since [p]etitioner had no other accidents, injuries or treatment for his right knee before January 2, 2022. I also find the inconsistencies in Dr. Goldberger's report to not be determinative as it makes sense from hearing Dr. Goldberger testifying that he has a heavy accent so when he transcribed his report there may have been some errors by the person who was typing the report. Petitioner testified that he had no prior accident. Dr. Richmond also testified that there were no prior injuries or issues with [p]etitioner's right knee.

We have previously stated

it is well settled that a judge of compensation is not bound by the conclusional opinions of any one or more, or all of the medical experts. The judge is considered to have expertise with respect to weighing the testimony of competing medical experts and appraising the validity of [the petitioner's] compensation claim. That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment.

[Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014) (Alterations in original) (internal citations and quotation marks omitted).]

The compensation court properly weighed the expert testimony and found Dr. Song more credible than Dr. Richmond. The credibility determinations are well-supported by substantial credible evidence in the record.

We turn to whether the court of compensation erred in its TTD award. The compensation judge stated:

The knee MRI and X-rays, other testing for the knee were the objective medical evidence showing a compensable injury to the knee[]. The medical evidence that was produced proves that the work-related accident of January 2, 2022, for which he had surgery by Dr. Richmond. Then after the surgery, [p]etitioner continued to have right knee complaints so much so that he was unable to continue working at Costco. Petitioner requested light duty proving to this [c]ourt that he did not want to stop working at Costco. This [c]ourt does not find that [p]etitioner took himself out voluntarily from the workforce. The surgery [was] aggravated by [p]etitioner's pre-existing condition

which is why he now requires a knee replacement for the right knee.

In addition, this [c]ourt finds that . . . [p]etitioner has proven that he is currently in need of further medical treatment to his right knee as per the opinion of Dr. Goldberger and Dr. Song, specifically, that he requires a right knee arthroplasty since the injections and viscosupplements he already had during the time of this trial have not been effective to cure him so that he can function at work and in his daily life.

As to the temporary disability issue, [Costco] argues too strongly regarding the fact [petitioner] was not under medical treatment at the time of his resignation. . . . Petitioner was returned to work full duty by Dr. Richmond as of July 15, 2022, and discharged as of August 2, 2022, and, after returning to Dr. Richmond at the request of [p]etitioner's counsel, on June 27, 2023. Petitioner was entitled to temporary disability benefits if he could not work due to his injuries. This [c]ourt found [p]etitioner to be extremely credible and that his "personal reasons" for resigning from his sales position at Costco were that he was unable to tolerate the pain and even requested light duty but was told he was in sales and, basically, that's the end of discussion. Pursuant to [Harbatuk v. S & S Furniture Systems Insulation, 211 N.J. Super. 614, 624-25 (App. Div. 1986)], the employer must offer light duty work in order to terminate temporary disability benefits.

Following his discharge from treatment by Dr. Richmond, there was no reason for [p]etitioner to ask for more treatment until he sought additional care on his own as [Costco] would not provide the appropriate treatment to get him to function better on a daily basis. [N.J.S.A.] 34:15-15; [see Benson v. Coca Cola Co., 115

13

N.J. Super. 585 (Law Div. 1971) remanded, 120 N.J. Super. 60 (App Div. 1972).] Petitioner then sought an opinion from Dr. Goldberger on June 29, 2023, who examined and found him to only be able to perform a sedentary job due to the injuries and he needed further treatment.

The cases cited by [Costco's] [c]ounsel in her brief were distinguishable from [t]his case and failed to persuade this [c]ourt that [p]etitioner is not entitled to temporary disability benefits from the time of his resignation until [he] returned to work full duty by a surgeon after his knee replacement and post-operative care. . . . Here, the [c]ourt finds i[t] more credible and logical that [p]etitioner's reason for leaving his job was due to the pain in his right knee, and . . . [Costco] failed to provide additional treatment after he was discharged from care by Dr. Richmond and failed to provide light duty although requested by [p]etitioner. Thus, he clearly suffered wage loss when he had to resign due to his injury.

. . . .

Therefore . . . [p]etitioner's [m]otion for [m]edical and [t]emporary [b]enefits is hereby granted allowing for . . . [p]etitioner to have the right knee arthroplasty performed by Dr. Frederick Song as well as any pre and post-surgical medical treatment and diagnostic exams. All of the experts including [p]etitioner's authorized treating surgeon were of the opinion that [p]etitioner was unable to work full duty, and the [c]ourt finds by a preponderance of the credible evidence that [p]etitioner had no other reason for resigning on September 29, 2022, other than his inability to perform his job secondary to his work injury and continuing pain following surgery. Thus, pursuant to [Cunningham v. Atlantic States Cast Iron Pipe Co.,

14

386 N.J. Super. 423, 432 (App. Div. 2006)], the [c]ourt is awarding [p]etitioner temporary disability payments from the date of resignation to current until he is returned to full-duty work status.

The compensation court's determinations were not arbitrary, unreasonable or capricious. The court made factual findings supported by the evidence and applied the relevant law. We see no reason to disturb the award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3829-24